IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 11-20274 MER |
| WARREN E. KARCH ) | |
| ELIZABETH M. KARCH ) | Chapter 11 |
| ) | |
| Debtors. ) | |
| ) | |
| ) | |
| LINDA JANTZ, PEGGY WESSELS, and ) | Adversary No. 11-1604  MER |
| BARBARA THORNTON ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| WARREN E. KARCH ) | |
| ) | Signed/Docketed |
| ) | April 30, 2012 |
| Defendant. ) | |

**ORDER**

THIS MATTER comes before the Court on the Plaintiffs' Motion for Summary Judgment (the "Motion"), and the Defendant's Response to Motion for Summary Judgment (the "Response").[1]  The Court has reviewed the Motion, the Response, and the attached exhibits, and hereby makes the following findings and conclusions.

**JURISDICTION**

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 (a) and (b) and 157(a) and (b).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) as it concerns a determination as to the dischargeability of a particular debt.

---

[1] Although typically the time for filing a response to a motion for summary judgment is 14 days from the date of the service of the motion, the Court in this instance will allow the Response, filed 34 days after the filing of the motion because 1) the Response provides additional information important to the determination of the Motion; and 2) no certificate of service was filed by the Plaintiffs to indicate when or if the Motion had been served.  See L.B.R. 7056-1(e).

## THE MOTION AND THE RESPONSE

### A. The Plaintiffs' Motion

The Motion, based on the Complaint, attached exhibits, and the Defendant's Answer, sets forth the following facts:

The Defendant, Debtor Warren E. Karch, was appointed to serve as the Personal Representative in the estate of Harvey P. Karch, the father of the Plaintiffs and the Defendant. Plaintiff Linda Jantz filed a petition to remove the Defendant as personal representative on May 14, 2010, in the Montana Thirteenth Judicial Court, Yellowstone County. An evidentiary hearing was conducted in the matter on August 30, 2010, and on September 1, 2010, the court issued an Order to Distribute Remaining Estate, Pay Fees and to Close Estate.

In the September 1, 2010 Order, the court stated all Harvey P. Karch's heirs,[2] including the Debtor, were given notice of the August 30, 2010 hearing. Attorney Jason L. Harkins appeared on behalf of the estate and Attorney Neil Enright appeared on behalf of Linda Jantz. The Court went on to state:

> Evidence was presented by Neil Enright that money was paid and distributed by the Personal Representative to persons that were not heirs as well as expenses that were not expenses as well as the value of the total estate. Money was taken out of the estate account while under the control and in possession of Warren "Tim" Karch. Exhibits were introduced.
>
> Evidence was presented that Warren "Tim" Karch transferred $79,000 to the IOLTA account of Harkins Law Firm, P.C., which remains there intact at this time. Neil Enright further brought up the fact that Jason L. Harkins did not take any money of the estate other than the legal fee based on the fee agreement.
>
> The final bill and agreement letter regarding the estate was introduced into evidence by Jason L. Harkins.
>
> NOW, THEREFORE, it is ordered as follows:
>
> 1. Jason L. Harkins shall pay from the IOLTA trust account the sum of $1,809.19 to Harkins Law Firm, P.C. and upon distribution of the remaining funds in the IOLTA account shall be discharged as attorney for the Estate.

---

[2] According to the Order, which is Exhibit 2 to the Motion, Harvey P. Karch was survived by six heirs, his sons Warren Karch, Harvey Karch, Jr., and Ronnie Karch, and his daughters Barbara Thornton, Linda Jantz, and Peggy Wessels.

2. The remaining amount in the IOLTA trust account shall be paid to Neil Enright on behalf of Linda Jantz, Barbara Thornton and Peggy Wessels ($77,190.81 total or $25,730.27 for each of them).

3. Pursuant to the evidence presented to the Court on August 30, 2010, each heir's share should have been $41,047.99. The difference for Linda Jantz, Barbara Thornton and Peggy Wessls would be $15,317.72 each. Therefore, Warren "Tim" Karch shall be personally liable and there is hereby a judgment on behalf of Linda Jantz, Barbara Thornton and Peggy Wessels entered against Warren "Tim" Karch in the total sum of $45,953.16. If this judgment is collected, such three heirs may request an order to divide the amount among them equitably.

4. Pursuant to the evidence presented to the court on August 30, 2010, each heir's share should have been $41,047.99. Ronnie and Harvey, Jr. received a total of $35,754.93. The difference for Ronnie Karch and Harvey Karch, Jr. (between what they received and what they should have received) is $46,341.05. Therefore, Warren "Tim" Karch shall be personally liable and there is hereby a judgement [sic] on behalf of Ronnie Karch and Harvey Karch, Jr. entered against Warren "Tim" Karch in the total sum of $46,341.05. If this judgment is collected, such two heirs may request an order to divide the amount among them equitably.

5. Upon payment of the amount set forth in paragraphs 1 and 2 above, the Estate shall be closed.[3]

The Plaintiffs' Motion argues this ruling should be given collateral estoppel effect with respect to the Defendant's defalcation while acting as a fiduciary, for purposes of the Plaintiff's claim for nondischargeability under 11 U.S.C. § 523(a)(4).[4]

## B.     The Defendant's Response

The Defendant's Response does not dispute the Motion's statement of facts, but notes the Defendant was not present at the hearing in the Montana probate court, so he cannot confirm or deny statements made at that hearing. Further, the Defendant makes the following additional allegations:

The Defendant believed the twin daughters of Plaintiff Peggy Wessels were heirs of the decedent, and paid funds to them. In addition, he states the Plaintiffs were

---

[3] Motion, Exhibit 2, p.2.

[4] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

served with a copy of the proposed list of heirs which included the twins, but did not object. The Defendant asserts he was advised by the probate estate's attorney, Jason Harkins, to disburse funds to the twins. Jason Harkins also told the Defendant he did not need to appear at the hearing held before the probate court.

The Defendant further argues the Montana court did not make a clear finding of defalcation on his part, but merely indicated he was liable for damages to the other heirs. Further, the Defendant states that but for the advice of the attorney, he would have been able to present a defense in the Montana court, and will be able to present a defense to the claims in this adversary proceeding by showing an accounting for the probate estate and showing the Plaintiffs failed to mitigate their damages by informing the Defendant the twins were not heirs or by objecting to the list of heirs.

## DISCUSSION

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[5] The burden for establishing entitlement to summary judgment rests on the movant.[6] Summary judgment is not appropriate where a dispute exists as to facts which could affect the outcome of the suit under relevant law.[7] A genuine dispute over a material fact exists when the "evidence supporting the claimed factual dispute [is] shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[8] In reviewing motions for summary judgment, the Court must view the record in the light most favorable to the non-moving party.[9] As noted by Chief Judge Howard R. Tallman of this Court:

> This Court exercises great circumspection in the granting of a motion for summary judgment. There should always be a natural preference for allowing the parties to proceed to a trial on the merits where there is any factual matter subject to a bona fide dispute which bears on the ultimate resolution of the controversy. *Associated Press v. U.S.*, 326 U.S. 1, 6, 65 S.Ct. 1416,

---

[5] FED. R. CIV. P. 56, (as incorporated by FED. R. BANKR. P. 7056); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986).

[6] *Celotex*, 477 U.S. at 323.

[7] *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987).

[8] *Anderson v. Liberty Lobby*, 477 U.S. 22, 249 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-289 (1968)).

[9] *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988).

1418, 89 L.Ed. 2013 (1945) ("Rule 56 should be cautiously invoked to the end that parties may always be afforded a trial where there is a bona fide dispute of facts between them"). "Where it appears however that there is no genuine issue as to any material fact upon which the outcome of the litigation turns, the case is appropriate for disposition by summary judgment and it becomes the duty of the court to enter such judgment." *Whelan v. New Mexico Western Oil and Gas Company*, 226 F.2d 156, 159 (10th Cir.1955).[10]

Section 523(a)(4) provides, "(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." To except a debt from discharge under § 523(a)(4), a creditor must establish: 1) a fiduciary relationship existed between the debtor and the creditor, and 2) the debt owed to the creditor is attributable to the fraud or defalcation committed by the debtor in the course of the fiduciary relationship.[11]

Collateral estoppel, or issue preclusion, is a doctrine prohibiting the re-litigation of issues of ultimate fact between the same parties that have been "determined by a valid and final judgment."[12] Collateral estoppel applies in bankruptcy court actions to determine the dischargeability of a debt.[13] "[C]ollateral estoppel is binding on the bankruptcy court and precludes relitigation of factual issues if (1) the issue to be precluded is the same as the one litigated in the earlier state proceeding; (2) the issue was actually litigated in the prior proceeding; and (3) the state court's determination of that issue was necessary to the resulting final and valid judgment."[14]

In determining whether collateral estoppel applies to prior state court proceedings, a federal court must observe the mandates of 28 U.S.C. § 1738, which codifies the Full Faith and Credit Clause of the Constitution, Art. IV, § 1.[15] Under 28

---

[10] *National Labor Relations Board v. Gordon (In re Gordon)*, 303 B.R. 645, 650 (Bankr. D. Colo. 2003).

[11] *Antlers Roof-Truss & Building Supply v. Storie (In re Storie)*, 216 B.R. 283, 286 (10th Cir. BAP 1997); *In re Woods*, 284 B.R. 282, 288 (D. Colo. 2001).

[12] *Phelps v. Hamilton*, 122 F.3d 1309, 1318 (10th Cir. 1997). (Collateral estoppel must be distinguished from *res judicata*, or claim preclusion, under which a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. *See In re Faires*, 123 B.R. 397, 401 (Bankr. D. Colo. 1991).)

[13] *Grogan v. Garner*, 498 U.S. 279, 284-85 n. 11 (1991).

[14] *Nelson v. Tsamasfyros (In re Tsamasfyros)*, 940 F.2d 605, 606-607 (10th Cir. 1991) (citations omitted).

[15] *Phelps*, 122 F.3d at 1318.

U.S.C. § 1738, a federal court looks to the preclusion law of the state in which the judgment was rendered, in this case, Montana.[16]

Montana courts apply a four-element test to determine whether collateral estoppel applies:

1. Was the issue decided in the prior adjudication identical to the issue raised in the action in question?

2. Was there a final judgment on the merits in the prior adjudication?

3. Was the party against whom preclusion is now asserted a party or in privity with a party to the prior adjudication?

4. Was the party against whom preclusion is now asserted afforded a full and fair opportunity to litigate the issue which may be barred?[17]

In the instant case, the second, and third elements are met. A judgment was entered on the September 1, 2010 order on March 22, 2011.[18] The Defendant was a party to the probate proceeding.

As to the first element, the Montana Probate Code provides:

> A personal representative is a fiduciary who shall observe the standards of care applicable to trustees under the laws of the state of Montana. A personal representative is under a duty to settle and distribute the estate of the decedent in accordance with the terms of any probated and effective will and this code and as expeditiously and efficiently as is consistent with the best interests of the estate. The personal representative shall use the authority conferred upon the personal representative by this code, the terms of the will, if any, and any order in proceedings to which the personal representative is party for the best interests of successors to the estate.[19]

The statute goes on to provide:

---

[16] *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *Hill v. Putvin (In re Putvin)*, 332 B.R. 619, 624 (10th Cir. BAP 2005); *In re Sutherland-Minor*, 345 B.R. 348, 353 (Bankr. D. Colo. 2006).

[17] *McDaniel v. State*, 350 Mont. 422, 432, 208 P.3d 817, 825-826 (Mont. 2009) (collecting cases).

[18] Motion, Exhibit 3.

[19] MONT. CODE ANN. § 72-3-610.

> If any exercise of power concerning the estate is improper, the personal representative is liable to interested persons for damage or loss resulting from breach of the personal representative's fiduciary duty to the same extent as a trustee of an express trust.[20]

The existence of fiduciary capacity under § 523(a)(4) is determined by federal law, but state law is relevant to the inquiry. Federal law narrowly defines the concept of a "fiduciary relationship" under § 523(a)(4) to include only relationships involving an express or technical trust.[21] If state law imposes the duties of a trustee on a party, the party is a fiduciary for purposes of § 523(a)(4).[22] In Montana, the relevant statute imposes upon the personal representative of a decedent's estate the liability of a trustee of an express trust, creating a fiduciary relationship for purposes of § 523(a)(4). Moreover, numerous cases have found an executor, administrator, or personal representative of an estate stands in a fiduciary capacity for purposes of determining whether a debt is nondischargeable under § 523(a)(4).[23] Accordingly, the Defendant in this case, acting as the personal representative for his father's estate, bore a fiduciary duty to the beneficiaries of that estate, including the Plaintiffs.

As to the fourth element, the Defendant does not deny the probate estate was represented by counsel at the hearing. However, he contends counsel instructed him to pay the funds which were later found to have been paid to persons not heirs of the estate, and told him he did not need to appear at the probate court hearing. This Court declines to enter into a malpractice dispute between an attorney and his client. A hearing the issue was noticed and neither the Defendant nor his attorney was present. This Court believes this satisfies the fourth element.

The remaining question is whether the Plaintiffs have shown the Defendant committed defalcation. Courts have long struggled to provide a precise definition of the term "defalcation." Generally, under § 523(a)(4), defalcation can be defined as "a fiduciary-debtor's failure to account for funds that have been entrusted to it due to any

---

[20] MONT CODE. ANN. § 72-3-616(1).

[21] *Fowler & Peth, Inc. v. Regan (In re Regan)*, 477 F.3d 1209, 1211 (10th Cir.2007) ("Under applicable federal principles, 'an express or technical trust must be present for a fiduciary relationship to exist under § 523(a)(4).' ") (citation omitted).

[22] *Id.*, at 1211 ("While 'the existence of a fiduciary relationship under § 523(a)(4) is determined under federal law,' state law is relevant to this inquiry.").

[23] *Utz and McIntire v. Frock (In re Frock)*, 2011 WL 1436358, *4 (Bankr. D. Md. April 14, 2011) (slip copy) (collecting cases). *See also Hoop v. Hoop*, 295 Fed. Appx. 211, 212 (9th Cir. 2008); *Cabana v. Kurzon (In re Kurzon)*, 399 B.R. 274, 282 (Bankr. M.D. Fla. 2008).

breach of a fiduciary duty, whether intentional, willful, reckless, or negligent. Furthermore, the fiduciary-debtor is charged with knowledge of the law and its duties."[24]

The September 1, 2010 order of the Montana court reflects funds were entrusted to the Defendant as a fiduciary of his father's estate, and he paid a portion of the funds to parties who were not heirs of the estate, and paid from the funds expenses that were not expenses of the estate. The court went on to indicate the amount which should have been paid to each heir, versus the amount available, and held the Defendant liable for the difference. What the Montana court did not address, however, is whether the Defendant committed acts which were intentional, willful, reckless, or negligent. Accordingly, material issues of fact remain with respect to whether the Defendant committed defalcation.

For these reasons, the Court finds the Plaintiffs have not demonstrated the application of collateral estoppel, under either Montana law or the law of this Circuit. In addition, disputed issues of material fact, as set forth above, remain to be tried.

IT IS THEREFORE ORDERED the Plaintiffs' Motion for Summary Judgment is hereby DENIED.

Dated April 30, 2012

BY THE COURT:

Michael E. Romero
United States Bankruptcy Judge

---

[24] *Antlers Roof-Truss & Builders Supply v. Storie (In re Storie)*, 216 B.R. 283, 288 (10th Cir. BAP 1997); *see also Anderson v. Currin (In re Currin)*, 55 B.R. 928, 935 (Bankr. D. Colo. 1985) (defalcation is more encompassing than either embezzlement or misappropriation); *see generally*, 4 Collier on Bankruptcy, ¶ 523.10 (15th ed. 2004) (defalcation refers to a failure to produce funds entrusted to a fiduciary and applied to conduct that does not necessarily reach the level of fraud, embezzlement, or misappropriation).