

Signed/Docketed
November 28, 2012

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
# The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 11-20274-MER |
| WARREN E. KARCH ) | |
| ELIZABETH M. KARCH ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| ) | |
| ) | |
| LINDA JANTZ, PEGGY WESSELS, and ) | Adversary No. 11-1604-MER |
| BARBARA THORNTON, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| WARREN E. KARCH ) | |
| ) | |
| Defendant. ) | |

## ORDER

THIS MATTER comes before the Court on the *Complaint for Determination That Debt is Not Dischargeable*[1] (the "Complaint") filed by Plaintiffs Linda Jantz, Peggy Wessels and Barbara Thornton (collectively, the "Plaintiffs"), and the *Answer*[2] filed by Debtor-Defendant Warren E. Karch (the "Defendant"). The Court has considered the evidence and legal arguments presented by the parties, and hereby makes the following findings of fact and conclusions of law.[3]

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 (a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) as it involves a determination as to the dischargeability of a

---

[1] Docket No. 1.

[2] Docket No. 5.

[3] During the course of trial, the Court admitted Plaintiffs' Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 10, 11, 12 and 13, and Defendant's Exhibits A, B and C.

particular debt under 11 U.S.C. § 523(a)(4).[4]  Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## BACKGROUND[5]

Harvey P. Karch had six biological children.  The Defendant, Harvey Karch, Jr. and Ronnie Karch are his sons.[6]  The three Plaintiffs are his daughters.[7]  The Defendant is the eldest sibling.  Plaintiff Peggy Wessels had two twin daughters: Jenise Duff ("Jenise") and Jerri Karch also known as Macie Martinson ("Jerri").  Harvey P. Karch and his first wife raised their granddaughters, Jenise and Jerri, until they reached the age of seventeen.

Following his bout with cancer, Harvey P. Karch's health began to decline.  Harvey P. Karch named the Defendant as the holder of his power of attorney, and named Jenise as the holder of a second power of attorney.  The powers of attorney were facilitated by attorney Jason L. Harkins ("Harkins").  Harvey P. Karch passed away on November 23, 2008.[8]

### A.   The Probate Proceeding

The Defendant was appointed to serve as the Personal Representative for the estate of Harvey P. Karch in a probate proceeding styled *In the Matter of the Estate of Harvey P. Karch*, Cause No. DP-09-68, Montana Thirteenth Judicial District Court, Yellowstone County (the "Probate Proceeding").[9]  From 2009 through 2010, the Defendant served as the personal representative for his father's probate estate, and Harkins served as counsel for the estate.  During this time, the Defendant distributed estate funds to each of the six siblings, and to Jenise and Jerri, believing they were also heirs of the estate.  The Defendant asserts he distributed the funds to Jenise and Jerri on the advice of counsel, Harkins.

On May 14, 2010, Plaintiff Linda Jantz ("Jantz") filed a *Petition to Remove Personal Representative, Appoint Successor Personal Representative, and To*

---

[4] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

[5] The background facts provided in this Order are based upon the parties' Joint Statement of Stipulated Facts, and the Defendant's admissions in his Answer.

[6] Complaint, ¶ 7; Answer, ¶ 3; JPS ¶ 6.

[7] Complaint, ¶ 5; Answer, ¶ 3; JPS ¶ 4.

[8] Complaint, ¶ 6; Answer, ¶ 3; JPS ¶ 5.

[9] Complaint, ¶ 8; Answer, ¶ 3; JPS ¶ 7.

*Hold Personal Representative Personally Liable for Damages Caused by His Breach of Fiduciary Duty and Improper Exercise of Power*, seeking to remove the Defendant as personal representative for distributing property to non-heirs Jenise and Jerri.[10] On August 30, 2010, the court in the Probate Proceeding held an evidentiary hearing.[11] Harkins appeared on behalf of the estate and Attorney Neil Enright appeared on behalf of Jantz. The Defendant was not present at the hearing.

After the conclusion of the evidentiary hearing, the court issued an *Order to Distribute Remaining Estate, Pay Fees and to Close Estate* dated September 1, 2010.[12] *Inter alia*, the state court determined the following:

1) Jenise and Jerri were not proven to be children of the deceased because no adoption papers were provided;

2) there were only six heirs to the estate, the Defendant, Harvey Karch, Jr., Ronnie Karch, Barbara Thornton, Linda Jantz and Peggy Wessels;

3) each heir was entitled to a share of the estate in the amount of $41,047.99 per heir;

4) $79,000 in estate funds held in Harkins' trust account would be paid $1,809.19 to Harkins and $77,190.81 to Plaintiffs ($25,730.27 each); and

5) the Defendant was personally liable to Plaintiffs in the amount of $15,317.72 each.[13]

On March 22, 2011, the state court entered Final Judgment in the Probate Proceeding against the Defendant and in favor of the Plaintiffs in the amount of $45,953.16.[14]

**C.    The Adversary Proceeding**

The Defendant is a debtor under Chapter 7 of the Bankruptcy Code, having filed a voluntary petition for relief together with his spouse, Elizabeth M.

---

[10]  JPS ¶ 8.

[11]  Complaint, ¶ 11; Answer, ¶ 6; JPS ¶ 9.

[12]  JPS ¶ 10.

[13]  Plaintiffs' Exhibit 2, p.2; *see also* Complaint, ¶ 12; Answer, ¶ 8; JPS ¶ 11.

[14]  Complaint, ¶ 13; Answer, ¶ 9; JPS ¶ 12.

Karch on May 2, 2011.[15]  On September 6, 2011, Plaintiffs commenced the instant adversary proceeding.

The Plaintiffs' Complaint alleges a single claim for relief against the Defendant: nondischargeability of the Defendant's debt to the Plaintiffs under § 523(a)(4).  Plaintiffs allege the judgment entered in the Probate Proceeding was sufficient to establish the elements of the Plaintiffs' claim under § 523(a)(4), and seek entry of a judgment against the Defendant declaring the amount of $45,953.16 nondischargeable.  Defendant's Answer denies any wrongdoing or existence of a fiduciary relationship.  The Defendant did not raise any affirmative defenses.

On March 15, 2012, Plaintiffs' filed their Motion for Summary Judgment, arguing the ruling in the Probate Proceeding should be given collateral estoppel effect for purposes of the Plaintiff's claim for nondischargeability under § 523(a)(4).   After applying Montana's four-element test regarding collateral estoppel,[16] the Court determined collateral estoppel did not apply because the Montana court did not make any findings as to whether the Defendant committed defalcation.[17]  However, the Court determined a fiduciary relationship existed between the Defendant and the Plaintiffs.[18]

## DISCUSSION

### A.  Section 523(a)(4)

Section 523(a)(4) provides in pertinent part: "(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[19]  To except a debt from discharge under § 523(a)(4), a creditor must establish by a preponderance of the evidence: 1) a fiduciary relationship existed between the debtor and the creditor, and 2) the

---

[15] The Defendant is also known as Warren "Tim" Karch.  Complaint, ¶ 1; Answer, ¶ 1; JPS ¶ 1.

[16] *McDaniel v. State*, 350 Mont. 422, 432, 208 P.3d 817, 825-826 (Mont. 2009) (1) Was the issue decided in the prior adjudication identical to the issue raised in the action in question? 2) Was there a final judgment on the merits in the prior adjudication? 3) Was the party against whom preclusion is now asserted a party or in privity with a party to the prior adjudication? 4) Was the party against whom preclusion is now asserted afforded a full and fair opportunity to litigate the issue which may be barred?).

[17] *See* Order, Docket No. 21, at p. 6 (internal citation omitted).

[18] *Id.* at p. 7.

[19] § 523(a)(4).

debt owed to the creditor is attributable to the fraud or defalcation committed by the debtor in the course of the fiduciary relationship.[20]

Generally, "exceptions to discharge are to be narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor."[21] While the burden of persuasion in all proceedings under § 523(a) rests with the creditor,[22] there is a shifting burden of proof for nondischargeability claims under § 523(a)(4):

> Once a creditor objecting to the dischargeability of a debt under section 523(a)(4) has met its burden of showing that the debtor is a fiduciary and that its debt has arisen because the debtor fiduciary has not paid the creditor funds entrusted to it, *Young*, 91 F.3d at 1371, the burden then shifts to the debtor-fiduciary to render an accounting to show that it complied with its fiduciary duties.[23]

As stated above, the Court previously determined a fiduciary relationship existed between the Defendant and the Plaintiffs. Specifically, the Court concluded as follows:

> The existence of fiduciary capacity under § 523(a)(4) is determined by federal law, but state law is relevant to the inquiry. Federal law narrowly defines the concept of a "fiduciary relationship" under § 523(a)(4) to include only relationships involving an express or technical trust. *Fowler & Peth, Inc. v. Regan (In re Regan)*, 477 F.3d 1209, 1211 (10th Cir. 2007) ("Under applicable federal principles, 'an express or technical trust must be present for a fiduciary relationship to exist under § 523(a)(4).'") (citation omitted). If state law imposes the duties of a trustee on a party, the party is a fiduciary for purposes of § 523(a)(4). *Id.* at 1211 ("While 'the existence of a fiduciary relationship under § 523(a)(4) is determined under federal law,' state law is relevant to this inquiry."). In Montana, the relevant statute imposes upon the personal representative of a decedent's estate the liability of a trustee of an express trust, creating a fiduciary relationship for purposes of § 523(a)(4). Moreover, numerous cases

---

[20] *Fowler Brothers v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir. 1996); *Antlers Roof-Truss & Building Supply v. Storie (In re Storie)*, 216 B.R. 283, 286 (10th Cir. BAP 1997); *In re Woods*, 284 B.R. 282, 288 (D. Colo. 2001).

[21] *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997).

[22] *See Grogan v. Garner*, 498 U.S. 279, 287 (1991).

[23] *Storie*, 216 B.R. at 288 (citing *In re Niles*, 106 F.3d 1456, 1461–62 (9th Cir. 1997); *Cappella v. Little (In re Little)*, 163 B.R. 497 (Bankr. E.D. Mich. 1994)).

have found an executor, administrator, or personal representative of an estate stands in a fiduciary capacity for purposes of determining whether a debt is nondischargeable under § 523(a)(4). *Utz and McIntire v. Frock (In re Frock)*, 2011 WL 1436358, *4 (Bankr. D. Md. April 14, 2011) (slip copy) (collecting cases). *See also Hoop v. Hoop*, 295 Fed. Appx. 211, 212 (9th Cir. 2008); *Cabana v. Kurzon (In re Kurzon)*, 399 B.R. 274, 282 (Bankr. M.D. Fla. 2008). Accordingly, the Defendant in this case, acting as the personal representative for his father's estate, bore a fiduciary duty to the beneficiaries of that estate, including the Plaintiffs.[24]

The Court hereby incorporates its previous findings, and determines the Plaintiffs have met their burden of establishing the Defendant owed a fiduciary duty to Plaintiffs, and Plaintiffs' claims arose from the non-payment of probate estate funds.[25] Because Plaintiffs established the first element of § 523(a)(4), the burden shifted to the Defendant to render an accounting proving he complied with his fiduciary duties.

**B.  The Defendant committed defalcation in the course of the fiduciary relationship.**

The sole issue before the Court is whether the Defendant committed "defalcation" during the course of the Defendant's fiduciary relationship within the meaning of § 523(a)(4). "Defalcation" is not defined in the Bankruptcy Code, but the Bankruptcy Appellate Panel of the Tenth Circuit held "defalcation" under § 523(a)(4) "is a fiduciary-debtor's failure to account for funds that have been entrusted to it due to **any** breach of a fiduciary duty, whether intentional, wilful, reckless, or negligent. Furthermore, the fiduciary-debtor is charged with knowledge of the law and its duties."[26] The *Storie* Court explained "[o]ur holding, **requiring no mental culpability on the part of the debtor-fiduciary**, is in accord with the express language of section

---

[24] Order, Docket No. 21, at p. 7.

[25] *Allen v. Romero (In re Romero)*, 535 F.2d 618, 621 (10th Cir. 1976) (requiring "the fiduciary relationship must be shown to exist prior to the creation of the debt in controversy.").

[26] *Storie,* 216 B.R. at 288 (emphasis added). The *Storie* Court recognized the three-way split of authority on the required mental culpability for defalcation - innocent mistake, negligence or recklessness. As of the date of this opinion, *Storie* remains binding precedent on this Court. The Court notes the United States Supreme Court recently granted a petition for a writ of certiorari to address the split of authority on this issue. *See Bullock v. BankChampaign, N.A.*, 670 F.3d 1160 (11th Cir. 2012), *cert. granted*, 80 U.S.L.W. 3709 (U.S. Oct. 29, 2012) (No. 11-1518).

523(a)(4)."[27]  The prevailing view is "defalcation" applies to conduct that does not reach the level of fraud, embezzlement, misappropriation or larceny.[28]  In addition, the general standard of liability in the District of Colorado is the failure of the fiduciary to account for entrusted money or property.[29]

The Defendant's conduct spans the period of two years following the death on Harvey P. Karch in November 2008.  At trial, Plaintiffs presented evidence regarding the events of 2009, and relied on their documentary evidence and the testimony of Jantz.  Defendant relied solely on his testimony in support of his position, but provided an explanation of events occurring in 2009 and 2010.  The Court finds both Jantz and the Defendant were credible witnesses.[30]

Much of the trial was spent focusing on the intent of the Defendant, who conceded he should not have made any payments from the estate to Jenise or Jerri.  The Defendant asserted he took actions in good faith to reasonably preserve the estate by hiring an attorney to assist him in the distribution of the estate, asking Harkins for legal advice, and relying on the advice from Harkins.  The Debtor asserts any mistakes he made were based on a reasonable mistake of fact, but not objectively reckless or negligent.

Based on the evidence presented at trial, this Court is convinced the Defendant acted without any intent to breach his fiduciary duties as the personal representative of his father's estate.  However, the Defendant's defense of innocent mistake for distributing funds to non-heirs cannot prevail because no mental culpability is required to find defalcation under § 523(a)(4).

---

[27] *Storie*, 216 B.R. at 289 (emphasis added).  The BAP provided support for its holding through the express language of § 523(a)(4) requiring no special mental element, the policy behind § 523(a)(4) that certain debts arising from a debtor's bad acts should not be discharged, and the public policy to protect the integrity of fiduciary relationships.  *Id.* at 289-90.

[28] *Storie*, 216 B.R. at 288; *see also In re Currin*, 55 B.R. 928, 935 (Bankr. D. Colo. 1985) (defalcation is more encompassing than either embezzlement or misappropriation); *see generally*, 4 COLLIER ON BANKRUPTCY ¶ 523.10[1][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2012) ("'Defalcation' refers to a failure to produce funds entrusted to a fiduciary and applies to conduct that does not necessarily reach the level of fraud, embezzlement or misappropriation.").

[29] *In re Woods*, 284 B.R. 282, 290 (D. Colo. 2001) (citing *In re Peterson*, 96 B.R. 314, 322 (Bankr. D. Colo. 1988); *In re Winden*, 120 B.R. 570, 574 (Bankr. D. Colo. 1990); and *Storie*, 216 B.R. at 286).  "Further, the common fact pattern for liability is the trustee's use of the *res* for his or her self-interest."  *Id.* (collecting cases).

[30] The Court notes the parties admitted they voluntarily did not engage in discovery in this case, and the only exhibits offered by Defendant were three rebuttal exhibits going to the expenses incurred by the probate estate for legal fees and funeral services.

Under *Storie*, any breach of fiduciary duty is sufficient to carry a finding of defalcation.

The Montana Probate Code placed affirmative duties on the Defendant as the personal representative of his father's estate:

> A personal representative is a fiduciary who shall observe the standards of care applicable to trustees under the laws of the state of Montana. A personal representative is under a duty to settle and distribute the estate of the decedent in accordance with the terms of . . . this code and as expeditiously and efficiently as is consistent with the best interests of the estate. The personal representative shall use the authority conferred upon the personal representative by this code . . . for the best interests of successors to the estate.[31]

The Defendant had a duty to act in the best interests of **successors** to his father's estate. Inherent is the responsibility of the Defendant to ascertain the identity of the proper heirs, or successors, to his father's estate prior to distributing any funds. The Defendant contends Harkins advised him to distribute funds to Jerri and Jenise, and also advised him not to attend the Probate Proceeding hearing. While this Court is troubled by these accusations, this Court declines to enter into a malpractice dispute between Harkins and the Defendant.

In terms of liability of a personal representative, the Montana Probate Code provides:

> If any exercise of power concerning the estate is improper, the personal representative is liable to interested persons for damage or loss resulting from breach of the personal representative's fiduciary duty to the same extent as a trustee of an express trust.[32]

The Montana state court determined the Defendant was liable for distributing money of the estate to persons that were not his heirs (Jerri and Jenise), and paying expenses that were not expenses of the estate.[33] No evidence presented at trial contradicted the Montana state court's findings. In fact, the Defendant confirmed on the record Jerri and Jenise were not adopted by Harvey P. Karch, and he distributed funds to these individuals.

---

[31] MONT. CODE ANN. § 72-3-610.

[32] MONT. CODE ANN. § 72-3-616(1).

[33] Plaintiffs' Exhibit 2.

The burden to render an accounting evidencing compliance with fiduciary duty rested with the Defendant.  The Defendant, relying on no documentation, testified he made multiple distributions to Jenise totaling approximately $20,000, and made a single distribution to Jerri in the amount of $10,000.[34]  At the close of evidence, the Defendant could not account for approximately $20,000 from the corpus of the probate estate.   The Court declines to cobble together an accounting because a detailed accounting is unnecessary given the Defendant's admissions at trial.  While it may have been a mistake made on reliance of legal advice, the Defendant admitted he distributed funds to non-heirs and could not account for at least $20,000 in estate funds.  The Court finds these acts alone constitute a violation of his fiduciary duties as personal representative.  Therefore, the Defendant did not carry his burden to render an accounting that would lead this Court to determine compliance with his fiduciary duties.

## CONCLUSION

For the reasons stated above,

IT IS ORDERED the debt of the Defendant to the Plaintiffs in the total amount of $45,953.16 is hereby found to be nondischargeable under 11 U.S.C. § 523(a)(4).  Each party shall bear their own attorneys' fees and costs.  A separate judgment will enter.

Dated November 28, 2012                          BY THE COURT:

Michael E. Romero
United States Bankruptcy Judge

---

[34] *See also* Plaintiffs' Exhibits 5 and 6.  These exhibits are signed receipts reflecting payments made to Jenise in the amount of $17,000 and Jerri in the amount of $10,000.