

Signed/Docketed
November 15, 2013

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re: | ) |
| | ) Case No. 11-20274-MER |
| WARREN E. KARCH | ) |
| ELIZABETH M. KARCH | ) Chapter 7 |
| | ) |
| Debtors. | ) |
| | ) |
| LINDA JANTZ, PEGGY WESSELS, and | ) Adversary No. 11-1604-MER |
| BARBARA THORNTON, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| WARREN E. KARCH | ) |
| | ) |
| Defendant. | ) |

**ORDER**

THIS MATTER comes before the Court on the Order issued by the United States Bankruptcy Appellate Panel of the Tenth Circuit on October 15, 2013 (the "BAP Order")[1] reversing this Court's previous Order dated November 28, 2013 (the "Trial Order")[2] and remanding this matter for further consideration in accordance with *Bullock*.[3] The Court has reviewed the record in this matter, the Trial Order and the BAP Order, and finds an additional hearing would not assist the Court with a final determination. In applying the United States Supreme Court conclusions set forth in *Bullock*, this Court holds the debt of the Defendant

---

[1] *Jantz v. Karch (In re Karch)*, --- B.R. ---, 2013 WL 5615941 (10th Cir. BAP Oct. 15, 2013).

[2] *Jantz v. Karch (In re Karch)*, Adv. Proc. No. 11-01604 MER, 2012 WL 1536037 (Bankr. D. Colo. Apr. 30, 2012) (slip copy).

[3] *Bullock v. BankChampaign, N.A.*, --- U.S. ---, 133 S. Ct. 1754, 1760, 185 L. Ed. 2d 922 (2013).

to the Plaintiffs in the total amount of $45,953.16 is dischargeable because Defendant lacks the requisite mental culpability under 11 U.S.C. § 523(a)(4).[4]

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 (a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) because it involves a determination as to the dischargeability of a particular debt under 11 U.S.C. § 523(a)(4). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## PROCEDURAL HISTORY[5]

### A. Adversary Proceeding Trial

Debtor-Defendant Warren E. Karch (the "Defendant") is a debtor under Chapter 7 of the Bankruptcy Code, having filed a voluntary petition for relief, with his spouse, on May 2, 2011. On September 6, 2011, Plaintiffs Linda Jantz, Peggy Wessels and Barbara Thornton (collectively, the "Plaintiffs") commenced the instant adversary proceeding.

On March 15, 2012, Plaintiffs filed a Motion for Summary Judgment, arguing the ruling in the Probate Proceeding should be given collateral estoppel effect for purposes of the Plaintiffs' claim for nondischargeability under § 523(a)(4). After applying Montana's four-element test regarding collateral estoppel,[6] the Court determined collateral estoppel did not apply because the Montana court did not make any findings as to whether the Defendant committed defalcation.[7] However, the Court determined a fiduciary relationship existed between the Defendant and the Plaintiffs.[8]

---

[4] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

[5] The Court previously set forth a detailed factual background in its Trial Order, pp. 2-4. Therefore, restatement of the facts is unnecessary, and the Court hereby incorporates all facts from its Trial Order into this Order. All capitalized terms have the same meaning as defined in the Trial Order.

[6] *McDaniel v. State*, 350 Mont. 422, 432, 208 P.3d 817, 825-826 (Mont. 2009) (1) Was the issue decided in the prior adjudication identical to the issue raised in the action in question? 2) Was there a final judgment on the merits in the prior adjudication? 3) Was the party against whom preclusion is now asserted a party or in privity with a party to the prior adjudication? 4) Was the party against whom preclusion is now asserted afforded a full and fair opportunity to litigate the issue which may be barred?).

[7] *See* Order, Docket No. 21, at p. 6 (internal citation omitted).

[8] *Id.* at p. 7.

On September 19, 2012, the Court held a trial in this proceeding to address a single issue: whether the Defendant committed "defalcation" during the course of the Defendant's fiduciary relationship with the Plaintiffs within the meaning of § 523(a)(4).  After the conclusion of the trial, the Court issued its Trial Order applying *Storie*[9] - then the controlling precedent - to the facts of this case.[10]  In the absence of a scienter element for defalcation, the Court held "the debt of the Defendant to the Plaintiffs in the total amount of $45,953.16 is hereby found to be nondischargeable under 11 U.S.C. § 523(a)(4)."[11]

### B.     Defendant's Notice of Appeal and the BAP Order.

On December 12, 2012, defendant filed his Notice of Appeal.  As set forth in the BAP Order:

> *Bullock* reverses *Storie*. After *Bullock*, in order to hold a debt non-dischargeable under § 523(a)(4), a bankruptcy court must find that the debtor acted with wrongful intent, or, at a minimum, with a conscious disregard of his or her fiduciary duties.
>
> The bankruptcy court determined that [Defendant] acted with no wrongful intent. . . . On the record before us, we cannot determine whether [Defendant] acted with a "conscious disregard" of his obligations to the proper heirs of Harvey's estate. The issue should be determined by the bankruptcy court on remand.[12]

As a result, the BAP remanded the matter to this Court for determination as to the Defendant's culpability.

## DISCUSSION

### A.     Section 523(a)(4)

Section 523(a)(4) provides in pertinent part: "(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . (4) for fraud or defalcation while acting in a fiduciary capacity,

---

[9] *Antlers Roof-Truss & Building Supply v. Storie (In re Storie)*, 216 B.R. 283 (10th Cir. BAP 1997).

[10] The BAP noted "[t]he linchpin of the *Storie* decision was the legal conclusion that a finding of 'mental culpability' was not necessary to a determination of non-dischargeability under § 523(a)(4)."  BAP Order, at p. 5.

[11] Trial Order, at p. 9.

[12] BAP Order, at p. 6-7.

embezzlement, or larceny."[13] Generally, "exceptions to discharge are to be narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor."[14] The burden of persuasion in proceedings under § 523(a)(4) rests with the creditor.[15]

In *Bullock*, the Supreme Court resolved a three-way circuit split regarding the requisite mental culpability under § 523(a)(4), holding as follows:

> Section 523(a)(4) of the Federal Bankruptcy Code provides that an individual cannot obtain a bankruptcy discharge from a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). We here consider the scope of the term "defalcation." We hold that it includes a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase. We describe that state of mind as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior.[16]

The Supreme Court further stated:

> Thus, where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. **Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty.** ALI, Model Penal Code § 2.02(2)(c), p. 226 (1985). See *id.*, § 2.02 Comment 9, at 248 (explaining that the Model Penal Code's definition of "knowledge" was designed to include "'wilful blindness'"). That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves *a gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.*, § 2.02(2)(c), at 226 (emphasis added). Cf. *Ernst & Ernst v. Hochfelder*,

---

[13] § 523(a)(4).

[14] *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997).

[15] See *Grogan v. Garner*, 498 U.S. 279, 287 (1991).

[16] *Bullock*, 133 S. Ct. at 1757.

> 425 U.S. 185, 194, n. 12, 96 S. Ct. 1375, 47 L.Ed.2d 668 (1976) (defining scienter for securities law purposes as "a mental state embracing intent to deceive, manipulate, or defraud").[17]

Thus, post-*Bullock*, to except a debt from discharge under § 523(a)(4), a creditor must establish by a preponderance of the evidence: 1) a fiduciary relationship existed between the debtor and the creditor, 2) the debt owed to the creditor is attributable to the fraud or defalcation committed by the debtor in the course of the fiduciary relationship, and 3) the debtor acted with a culpable state of mind. In this case, the Court found the existence of a fiduciary relationship, and the amount of the debt is known and attributable to the actions of the Defendant. The remaining question is whether the Defendant committed such acts with "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior."[18]

### B. Defendant did not act with a Culpable State of Mind.

The Plaintiffs bear the burden of proof on the requisite scienter for § 523(a)(4).[19] This Court previously determined, *inter alia*:

> Much of the trial was spent focusing on the intent of the Defendant, who conceded he should not have made any payments from the estate to Jenise or Jerri. The Defendant asserted he took actions in good faith to reasonably preserve the estate by hiring an attorney to assist him in the distribution of the estate, asking Harkins for legal advice, and relying on the advice from Harkins. The Debtor asserts any mistakes he made were based on a reasonable mistake of fact, but not objectively reckless or negligent.
>
> **Based on the evidence presented at trial, this Court is convinced the Defendant acted without any intent to breach his fiduciary duties as the personal representative of his father's estate.** However, the Defendant's defense of innocent mistake for distributing funds to non-heirs cannot prevail because no mental culpability is required to find defalcation under § 523(a)(4). Under *Storie*, any breach of fiduciary duty is sufficient to carry a finding of defalcation.[20]

---

[17] *Id.* at 1759-60 (emphasis added).

[18] *Id.* at 1757.

[19] *See Grogan v. Garner*, 498 U.S. 279, 287 (1991); *Bullock*, 133 S. Ct. at 1757.

[20] Trial Order, at p. 7-8 (emphasis added).

This Court concluded Defendant acted with no wrongful intent, and finds no cause to disturb this conclusion. On remand and after reviewing the trial audio transcript again, the only issue for determination is whether Defendant acted with "gross recklessness" or a "conscious disregard" of his obligations to the proper heirs of Harvey P. Karch's estate with respect to his fiduciary duties.

Co-Plaintiff Peggy Wessels had two twin daughters, Jerri and Jenise. However, Harvey P. Karch ("Harvey") and his first wife raised Jenise and Jerri from the time they were infants until they reached the age of seventeen. Following his bout with cancer, Harvey's health began to decline. He named the Defendant as the primary holder of his power of attorney, and asked Defendant to care for Jerri and Jenise in the event of his death. Harvey named Jenise as the secondary holder of his power of attorney. The powers of attorney were facilitated by Harkins.

After his father passed away in late 2008, Defendant served as the personal representative for his father's probate estate, and he hired Harkins as counsel for the estate to assist him in the distribution of the estate. Defendant paid fees in the approximate amount of $12,000 to Harkins for his services.

In early 2009, Defendant received the first funds for distribution to creditors and heirs. Defendant opened a new bank account and deposited these funds. Immediately thereafter, estate creditors, Defendant's siblings, and Jerri and Jenise approached the Defendant seeking distributions. Prior to distributing any funds from the estate, Defendant sought advice from Harkins.

In 2009, on the advice of Harkins, Debtor sent settlement letters documenting the distributions to his siblings, Jerri and Jenise.[21] Importantly, these letters also document Defendant's belief Jerri and Jenise were rightful heirs at the time distributions were made.[22] The letters also reflect the estate expenses that needed to be paid, including necessary repairs to Harvey's home, three years of back real property taxes, credit card debts, medical debts, funeral expenses and nursing home costs.[23] The Defendant's credible testimony confirms Harkins advised him to distribute funds to Jerri and Jenise, and acting on this advice, he distributed funds and documented those distributions with signed and notarized settlement letters.[24] There was no evidence presented to this Court indicating Harkins at any time advised Defendant not to distribute funds to Jerri or Jenise.

---

[21] *See* Exhibits 5-8.

[22] *See id.*

[23] *See id.*

[24] *See id.*

In May 2010, long after the distributions to Jerri and Jenise were made, the Plaintiffs initiated an action in Montana to remove Defendant as the personal representative for his father's estate for distributing funds to non-heirs. Although Harkins attended the hearing on behalf of the probate estate, Harkins advised Defendant not to attend the Probate Proceeding hearing. This hearing resulted in a state court judgment against the Defendant in favor of Plaintiffs in the amount of $45,953.16.

Under the *Bullock* lens, the Court finds ample evidence Defendant did not act with a conscious disregard of his obligations as a fiduciary for his father's probate estate. On the contrary, Defendant hired counsel to oversee the probate process, consulted with counsel prior to making any distributions, and documented his distributions to Jerri and Jenise along with his belief they were rightful heirs.[25] His reliance on the legal advice of Harkins certainly does not rise to the level of "a substantial and unjustifiable risk his conduct will turn out to violate a fiduciary duty."[26] Rather, the Court finds Defendant acted as a reasonable person would under the same circumstances, and Defendant's distributions to Jerri and Jenise were an innocent mistake.

On the facts of this case, following the advice of retained legal counsel does not rise to the minimum level of mental culpability required to sustain a nondischargeabilty claim under § 523(a)(4). Plaintiffs failed to meet their burden of proof on this issue. In addition, Plaintiffs' reliance on the *Storie* decision proves fatal as well. *Bullock* requires a showing of knowledge or gross recklessness. As a result, Defendant's defense of innocent mistake will carry the day.

---

[25] The Court notes Harkins was not called as a witness at trial. In the absence of any conflicting testimony, coupled with the determination Defendant is a credible witness, the Court finds no evidence sufficient to rebut Defendant's statements concerning is discussions with Harkins.

[26] *Bullock*, 133 S. Ct. at 1759-60.

**CONCLUSION**

For the reasons stated above,

IT IS ORDERED the debt of the Defendant to the Plaintiffs in the total amount of $45,953.16 is hereby found to be dischargeable under 11 U.S.C. § 523(a)(4).  Each party shall bear their own attorneys' fees and costs.  A separate judgment will enter.

Dated November 15, 2013					BY THE COURT:

						_____
						Michael E. Romero
						United States Bankruptcy Judge